**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

NICCOLE M.,

                Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

                        5:25-cv-90
                         (DJS)

**APPEARANCES:**                  **OF COUNSEL:**

OLINSKY LAW GROUP         HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.    FERGUS J. KAISER, ESQ.
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM DECISION AND ORDER[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a

decision by the Commissioner of Social Security that Plaintiff was not disabled.  Dkt.

No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Dkt. No. 5 & General Order 18.

and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 13, 15, & 16.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion for Judgment on the Pleadings is denied.

## I. RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1969.  Dkt. No. 8, Admin. Tr. ("Tr.") at pp. 282 & 329.  She has at least a ninth-grade education.  Tr. at p. 290.  She has not worked since 2006.  *Id.* She has past work experience as a hotel dishwasher, a grocery store and event center cashier, and a retail clerk.  *Id.*  Plaintiff alleges disability based on fibromyalgia, anxiety, depression, pinched nerves in both shoulders, pinched nerves in neck, and lower back pain.  Tr. at p. 289.

### B.  Procedural History

Plaintiff applied for supplemental security income and disability insurance benefits on December 17, 2015.  Tr. at pp. 106 & 118.  She alleged a disability onset date of January 1, 2010.  *Id.*  Plaintiff's applications were initially denied on April 14, 2016, Tr. at pp. 127-32, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 141-42.  Two administrative hearings were held before ALJ Robyn Hoffman, with one on May 16, 2018, and a second on December 14, 2018, at which Plaintiff and a vocational expert testified.  Tr. at pp. 1427-80.  On January 16, 2019, ALJ Hoffman issued a written decision finding Plaintiff was

2

not disabled.  Tr. at pp. 12-42.  On October 18, 2019, the Appeals Council denied Plaintiff's request for review.  Tr. at pp. 1-6.

In 2019, Plaintiff filed suit in the Northern District of New York seeking review of that decision.  Tr. at pp. 1408-14.  The parties stipulated to remand the matter for further proceedings, and the case was remanded in 2020.  Tr. at pp. 1415-16; *see also* Tr. at pp. 1419-26.  On January 13, 2021, Plaintiff amended her alleged onset date of disability to July 1, 2014.  Tr. at pp. 1665 & 2202.  Administrative hearings were then held before ALJ Elizabeth Koennecke on February 16, 2021; May 5, 2021; and August 4, 2021.  Tr. at pp. 1328-70.  On August 18, 2021, ALJ Koennecke issued a written decision finding Plaintiff was not disabled.  Tr. at pp. 1263-91.

In 2021, Plaintiff filed another lawsuit in the Northern District of New York seeking review of ALJ Koennecke's decision.  *See* Tr. at p. 2333.  The parties stipulated to remand the matter for further proceedings, and the case was again remanded in 2022. Tr. at pp. 2333-34; *see also* Tr. at pp. 2337-42.  A further administrative hearing was held before ALJ Koennecke on February 1, 2023, at which Plaintiff and a vocational expert testified.  Tr. at pp. 2235-57.  On April 20, 2023, ALJ Koennecke issued a written decision again finding Plaintiff was not disabled.  Tr. at pp. 2396-2420.

Plaintiff filed written exceptions to ALJ Koennecke's April 20, 2023 decision, and on December 4, 2023, the Appeals Council reviewed that decision and again remanded the matter for further proceedings before a different ALJ.  Tr. at pp. 2385-92. An administrative hearing was held before ALJ Mary Pelton on October 28, 2024, at

which Plaintiff and a vocational expert testified.  Tr. at pp. 2258-90.  On November 21, 2024, ALJ Pelton issued a partially favorable decision (the "2024 Decision").  Tr. at pp. 2202-16.  This action followed.

### C.  ALJ Pelton's 2024 Decision

In the 2024 Decision, ALJ Pelton made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2023.  Tr. at p. 2205.  Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2014, the amended alleged onset date.  *Id.*  Third, the ALJ determined that, since the July 1, 2014 alleged onset date of disability, Plaintiff had the following severe impairments: lumbar spine disorder, cervical spine disorder, fibromyalgia, obesity, depressive disorder, and anxiety disorder.  *Id.*  Fourth, the ALJ concluded that, since July 1, 2014, Plaintiff had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  Tr. at p. 2207.  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work, except:

> she is unable to climb ladders/ropes/scaffolds. She can occasionally climb ramps/stairs, balance (as defined in the SCO), stoop, crouch, kneel and crawl. [She] can occasionally reach overhead, and she can frequently reach in all other directions. She must avoid exposure to hazards such as unprotected heights and dangerous moving machinery. [She] can understand, remember and carry out simple instructions. She can use judgment to make simple, work-related decisions. [She] should work at a job with no more than occasional changes in the routine work setting. She cannot perform work requiring a specific production rate or work that

4

requires hourly quotas. [She] can have frequent interaction with supervisors and coworkers and occasional interaction with the public.

Tr. at p. 2209.

Sixth, the ALJ found that Plaintiff has no past relevant work. Tr. at p. 2214. The ALJ then found that, prior to the established disability onset date, Plaintiff was a "younger individual age 18-49," but that, on April 11, 2024, Plaintiff's age category changed to "an individual of advanced age." *Id.* The ALJ also found that Plaintiff has a limited education. *Id.* Next, the ALJ found that transferability of job skills was not an issue because Plaintiff does not have past relevant work. *Id.*

The ALJ then determined that, prior to April 11, 2024, the date that Plaintiff's age category changed, based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Tr. at pp. 2214-15. However, the ALJ determined that, beginning on April 11, 2024, the date that Plaintiff's age category changed, based on Plaintiff's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. at pp. 2215-16.

The ALJ, therefore, determined that Plaintiff was not disabled prior to April 11, 2024, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. Tr. at p. 2216. The ALJ also found that Plaintiff's disability is expected to last twelve months past the onset date. *Id.* Further, the ALJ concluded

5

that Plaintiff was not under a disability within the meaning of the Social Security Act at any time through June 30, 2023, the date last insured.  *Id.*

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is

7

whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

In this case, Plaintiff presents a single issue for review. She argues that the RFC contained in the 2024 Decision is legally deficient due to ALJ Pelton's failure to properly weigh the opinion of Plaintiff's treating physicians, Drs. Reid and Hegland, and reliance on a vague consultative examination opinion rendered by Dr. Lorensen. Dkt. No. 13, Pl.'s Mem. of Law. Defendant responds that ALJ Pelton properly assessed the medical opinion evidence and that substantial evidence supports the 2024 Decision. Dkt. No. 15, Def.'s Mem. of Law.

8

In the 2024 Decision, ALJ Pelton discussed "the opinion at Exhibit D36F, which contains an illegible signature."  Tr. at p. 2212.  Plaintiff and Defendant both appear to agree that the medical source statement referenced by ALJ Pelton as "the opinion at Exhibit D36F" (hereinafter, the "Medical Source Statement") was authored by Dr. Reid. *See* Pl.'s Mem. of Law at pp. 14-15; Def.'s Mem. of Law at p. 8.  Likewise, the parties seem to agree that Dr. Reid was Plaintiff's treating physician and that the treating physician rule is applicable.  *See* Pl.'s Mem. of Law at pp. 14-15; Def.'s Mem. of Law at p. 8; *see also Tucker v. Comm'r of Soc. Sec.*, 2025 WL 1374660, at \*1 (2d Cir. May 13, 2025) (citing 20 C.F.R. § 416.927) ("The treating physician rule applies to claims, such as this one, that were filed before March 27, 2017.").  As such, Dr. Reid's Medical Source Statement "must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Tucker v. Comm'r of Soc. Sec.*, 2025 WL 1374660, at \*1 (quotation and internal quotation marks omitted).

The ALJ's failure to identify the Medical Source Statement as one from a treating physician makes it impossible for the Court to determine if the proper standard was applied in evaluating that opinion.  *See*, *e.g.*, *Brathwaite v. Barnhart*, 2007 WL 5322447, at \*12 (S.D.N.Y. Dec. 20, 2007), *report and recommendation adopted*, 2008 WL 2669351 (S.D.N.Y. June 26, 2008) ("As the ALJ neither explicitly referred to Dr. Doshi as a treating physician nor explicitly found that he was not a treating physician, the

9

record is also unclear as to whether the ALJ considered the 'treating physician rule' to apply to his consideration of Dr. Doshi's report.").

In any event, the ALJ also erred in her analysis of the Medical Source Statement. As noted by ALJ Pelton, in the Medical Source Statement, Plaintiff was limited to less than two hours of sitting and less than two hours of standing/walking in an eight-hour workday.  Tr. at p. 2212 (citing Tr. at p. 2928).  ALJ Pelton explained that she afforded "little weight" to the Medical Source Statement because it: (i) was one of several opinions that was "based on limited evaluations" of Plaintiff, *id.*; (ii) amounted to a "'checkbox' form[] without referral to clinical or diagnostic finding or narrative explanation for the limitations that were provided," Tr. at p. 2213; and (iii) identified limitations "based primarily on [Plaintiff's] subjective self-reports of symptoms and functional limitations that are inconsistent with evidence," including Plaintiff's "overall positive response to conservative treatment, her inconsistent statements about the severity of her symptoms, and her engagement in activities consistent with a range of light work."  Tr. at pp. 2213-14.

In describing the weight afforded to the Medical Source Statement, ALJ Pelton grouped the Medical Source Statement together with the medical opinions of other doctors, including Drs. Arienmughare, Lewis, and Hegland, and did not differentiate between the opinions.  Tr. at pp. 2212-14.  Most notably, ALJ Pelton criticized the Medical Source Statement and the opinions of Drs. Arienmughare and Lewis as all being "based on limited evaluations" of Plaintiff.  Tr. at p. 2212.  However, since ALJ Pelton

10

stated in the 2024 Decision that she could not read the signature on the Medical Source Statement, *id.*, and thus was presumably unaware of the extent of evaluations that preceded the Medical Source Statement's creation, it remains unclear to the Court how ALJ Pelton determined that the Medical Source Statement was based on limited evaluations. The Medical Source Statement itself states that the frequency and length of contact between its author and the Plaintiff was every two to three months, Tr. at p. 2927, and the ALJ does not explain in the 2024 Decision why she seemingly rejected that statement in forming her conclusion that the Medical Source Statement was based on limited evaluations. Progress notes provided by the Syracuse Community Health Center also indicate that Plaintiff treated with Dr. Reid for almost ten months prior to the time that Dr. Reid rendered the Medical Source Statement. *Compare* Tr. at p. 2980 (progress note by Dr. Reid dated March 22, 2022) *with* Tr. at p. 2931 (Medical Source Statement dated January 18, 2023).

Additionally, ALJ Pelton grouped together numerous opinions when she characterized the Medical Source Statements and the opinions of Drs. Arienmughare, Lewis, and Hegland as being "primarily based on the claimant's subjective self-reports of symptoms and functional limitations." Tr. at pp. 2213-14. Initially, the Court notes that the Medical Source Statement does not itself indicate whether it is based on Plaintiff's subjective complaints or objective medical findings. *See* Tr. at pp. 2927-31. In light of this, and combined with the fact that the ALJ acknowledges that she did not know who authored the Medical Source Statement, Tr. at p. 2212, and thus did not know

11

what, if any, medical records formed the basis for the opinions contained therein, it is not clear to the Court how ALJ Pelton came to the conclusion that the Medical Source Statement was based on Plaintiff's subjective complaints.

Nevertheless, while it is within an ALJ's discretion to consider an individual's subjective complaints in light of medical findings and other evidence, the fact that an opinion is based on subjective complaints is not a *per se* reason to reject it. *Fuller v. Comm'r of Soc. Sec.*, 2015 WL 5512383, at *6, 8, & 10 (N.D.N.Y. Sept. 16, 2015) ("[I]t was error for the ALJ to completely reject the treating physician's functional limitations solely because they were based upon subjective complaints."). Rather, in determining whether an individual's subjective complaints are credible, the ALJ must "clearly articulate[]" "specific reasons for the weight given to the individual's symptoms" that are "consistent with and supported by the evidence." *Joseph v. O'Malley*, 772 F. Supp. 3d 265, 275 (E.D.N.Y. 2024) (quotation and internal quotation marks omitted). The ALJ should also "specify any of [Plaintiff's] statements that are inconsistent with medical evidence in the record and explain why [s]he choose[] to discredit them" with reference to the applicable statutory factors. *Id.* (citing 20 C.F.R § 404.1529(c)(3)(i)-(vii)) (quotations and internal quotation marks omitted) (cleaned up).

Here, the ALJ does not specify which of Plaintiff's subjective complaints she is rejecting; she only vaguely refers to Plaintiff's "subjective self-reports of symptoms and functional limitations." Tr. at p. 2214. Further, while ALJ Pelton explained that she found Plaintiff's subjective complaints inconsistent with Plaintiff's "overall positive

12

response to conservative treatment, her inconsistent statements about the severity of her symptoms, and her engagement in activities consistent with a range of light work," the ALJ makes no reference to the record to support her conclusions, Tr. at p. 2214, and fails to sufficiently analyze the remaining statutory factors.

ALJ Pelton's rejection of Plaintiff's subjective complaints to Dr. Reid is especially concerning here given that Plaintiff argues, and Defendant does not seem to dispute, that "fibromyalgia is the exclusive physical impairment that Dr. Reid's opinion is based on," Pl.'s Mem. of Law at p. 17 (citing Tr. at p. 2927); *see generally* Def.'s Mem. of Law, and other courts have found that fibromyalgia "is a 'disease that eludes objective measurement,'" *Lisa E. v. Comm'r of Soc. Sec.*, 2021 WL 4472469, at *7 (W.D.N.Y. Sept. 30, 2021) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)), and "often does not result in objective findings or diagnostic tests." *Id.* at *10 (quotation and internal quotation marks omitted). Thus, "a physician's measurements of limitations due to fibromyalgia are necessarily based, at least in part, on a claimant's subjective reporting of pain." *Id.* at *8 (citations omitted).

Ultimately, it is the ALJ's responsibility to "build a logical bridge between the record evidence and her conclusions" to enable meaningful review. *Sonia A. v. Bisignano*, 2026 WL 496922, at *3 (N.D.N.Y. Feb. 23, 2026) (quotation, internal quotation marks, and citation omitted). Here, ALJ Pelton failed to build a logical bridge between the record and her conclusions that the Medical Source Statement was based on limited evaluations and Plaintiff's subjective complaints, thereby making remand

13

appropriate to ensure that the full record is evaluated and proper consideration is given to that record.  Taken together, these issues also leave the Court unable to determine whether the treating physician rule was properly applied in this case.  *Beth Marie N. v. Comm'r of Soc. Sec.*, 2023 WL 6065309, at *6 (N.D.N.Y. Aug. 9, 2023), *report and recommendation adopted*, 2023 WL 6065945 (N.D.N.Y. Sept. 18, 2023).  Accordingly, the Court remands the matter for reconsideration and further explanation.

In doing so, the Court rejects Plaintiff's request that the matter be remanded solely for a calculation of benefits.  Pl.'s Mem. of Law at p. 25.  "Reversal for calculation of benefits is considered a rare case."  *Lisa S. v. Comm'r of Soc. Sec.*, 2026 WL 111477, at *1 (N.D.N.Y. Jan. 15, 2025) (quotation, internal quotation marks, and citation omitted).  The Court does not find this to be such a rare case and, for the reasons explained in more detail above, the Court does not find that this is a case where remand for further proceedings would serve no purpose.  *See*, *e.g.*, *Mari Eli S.D. on behalf of S.Y.C.S. v. Comm'r of Soc. Sec.*, 2024 WL 4204254, at *13 (N.D.N.Y. Aug. 19, 2024), *report and recommendation adopted*, 2024 WL 4203972 (N.D.N.Y. Sept. 16, 2024) (citing cases declining to remand for calculation of benefits where ALJ failed to properly evaluate opinion provided by plaintiff's treating provider).

The Court is sympathetic to the fact that Plaintiff filed her claims over a decade ago, Tr. at pp. 106 & 118 (stating that Plaintiff applied for supplemental security income and disability insurance benefits on December 17, 2015), and that this claim has been remanded several times before.  Tr. at pp. 1415-16, 2333-34, & 2385-92.  "However,

delay alone is an insufficient basis on which to remand for benefits." *Lisa S. v. Comm'r of Soc. Sec.*, 2026 WL 111477, at \*1 (quotation and internal quotation marks omitted) (citing cases); *Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005) (quotation and internal quotation marks omitted); *see*, *e.g.*, *Black v. Berryhill*, 2018 WL 4501063, at \*7 (W.D.N.Y. Sept. 20, 2018) (remanding for further administrative proceedings rather than for a calculation of benefits despite the fact that plaintiff's application had been pending for over nine years).

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **REMANDED pursuant to sentence four** for further proceedings; and it is further

15

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated:  March 6, 2026
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

16